**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

DR. GEORGE WILLIE BUFORD, III

               Plaintiff,

v.

CAPTAIN J. GILLEY; THOMAS
McGEE, SMU Hearing Administrator;
T. LANE, Discipline Hearing Officer;
LT. WARE, SHU Lieutenant; C/O
BISHOFF, SHU No. 1; and J.
CANSFIELD, S.I.S. Lieutenant,

               Defendants.

Civil No.:   5:14-CV-160
(JUDGE STAMP)

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On December 15, 2014, while incarcerated at USP Lewisburg, Plaintiff filed a *pro se* complaint alleging a cause of action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).   ECF No. 1.   Plaintiff's complaint concerns events that occurred at USP Hazelton which is located in the Northern District of West Virginia.   Id.

On February 18, 2016, Defendants were ordered to answer Plaintiff's complaint. ECF No. 19. After four Motions Seeking Extension of Time to Answer were granted, on September 23, 2016, Defendants filed a Motion to Dismiss or, alternatively, for Summary Judgment.   ECF Nos. 31, 32, 34, 35, 38, 39, 42, and 43; ECF No. 45.   In addition, they filed a Memorandum in Support with eight exhibits.   ECF No. 46.   On September 26, 2016, Plaintiff was issued an Order and Roseboro Notice.   ECF No. 48.

On October 4, 2017, Plaintiff filed a Motion for Default Judgment which was denied on October 13, 2016.  ECF No. 52; ECF No. 57.  Although Plaintiff filed an Affidavit in Opposition to Defendant's Motion to Dismiss [ECF No. 53], a second Roseboro Notice was issued on October 13, 2016, after it became clear that Plaintiff had not received the sealed documents in support of Defendants' Motion to Dismiss or, alternatively, Summary Judgment until they were mailed a third time on October 12, 2016.  ECF No. 56; ECF No. 55.

Plaintiff filed a Rule 56(d) Motion on November 2, 2016, and duplicate motion on December 5, 2016, wherein he sought to stay consideration of Defendant's Motion to Dismiss, or alternatively Summary Judgment until he had adequate time to obtain numerous documents and take in person depositions of sixty-three individuals plus the named Defendants. ECF No. 60; ECF No. 62. On March 17, 2017, the undersigned denied Plaintiff's Rule 56(d) Motions. ECF No. 67.  However, Plaintiff was given additional time to respond to Defendants' Motion to Dismiss or, alternatively, Summary Judgment.  Id. at 3.

Plaintiff filed his Response to Defendants' Motion to Dismiss on May 1, 2017. ECF No. 69.  Accordingly, this matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. FACTS

### A.  Plaintiff's Complaint

In his Complaint, Plaintiff names the Defendants in both their individual and official capacities.  ECF No. 1 at 1.  Plaintiff's complaint raises four issues that occurred

at USP Hazelton.[1]  Id. at 4.  First, he alleges that he was deprived of due process and subjected to cruel and unusual punishment when he was assigned to the Special Housing Unit ("SHU").   Id. at 7-8.  Second, he alleges that he was deprived of due process when he was assigned to a Special Management Unit ("SMU").  Id. at 9. Third, he alleges that the conditions of USP Hazelton SHU cell 102 subjected him to cruel and unusual punishment.   Id.   Finally, Plaintiff alleges that several USP Hazelton staff members interfered with his contractual obligations in a private contract between himself and Monongalia General Hospital.[2]  Id.

For relief, Plaintiff seeks: (1) the award of the face value of the Private Security Agreement with Monongalia; (2) compensatory damages against Gilley and Ware, jointly and severally in the amount of 1.5 million dollars and punitive damages of 4.5 million dollars; (3) release from the SMU; (4) expungement of incident report #2497504[3] on double jeopardy grounds; (5) $2.5 million against all Defendants, both jointly and severally, for depriving him of the rights and privileges guaranteed by the Constitution; (6) prosecution of all Defendants on federal criminal civil rights violations; the return of all of his property unlawfully taken by federal actors at USP Hazelton and USP

---

[1] Plaintiff was incarcerated at USP Hazelton from December 27, 2011 through March 24, 2014. ECF No. 46-1 at ¶ 6.

[2] "On or about August 8, 2013, Plaintiff [alleges that he] entered in a contractual agreement with Monongalia General Hospital of Morgantown, West Virginia for diagnosis and treatment. [Plaintiff maintains that the hospital] failed to treat [him] according to the spirit of the contract, and he sought commercial redress for said failure. [Plaintiff further alleges that] Monongalia General Hospital defaulted on the commercial redress, granting [him] a priority claim interest in the instruments evidencing the contract, and the subsequent presentment and default. [Plaintiff alleges that various Defendants] withheld all documents necessary for [him] to prosecute [his] claims against the [hospital]." ECF No. 1 at 12.

[3] It appears that this is the incident report for possessing a dangerous weapon as outlined in Section B2 *infra*.

3

Lewisburg[4]; and (7) $30,000,000 in punitive damages against all Defendants, both jointly and severally.

### B. Defendant's Motion to Dismiss or alternatively Summary Judgment

In support of Defendants' Motion to Dismiss or alternatively Summary Judgment, Defendants set forth the following facts they believe are material to this case.

1. USP Hazelton staff members discovered a list containing the personal contact information of other staff members in Plaintiff's cell, which resulted in Plaintiff being assigned to the USP Hazelton SHU while staff members investigated the contact list.

On September 23, 2013, USP Hazelton staff members found a contact list in Plaintiff's cell containing personal phone numbers, email addresses, and other personal information of certain staff members. ECF No. 46-2 at ¶ 5. USP Hazelton Special Investigative Services ("SIS") Lieutenant Jamie Canfield ordered that Plaintiff should be placed in the USP Hazelton SHU under Administrative Detention status until the contact list was fully investigated. Id. at ¶ ¶ 1, 5.

---

[4] Although Plaintiff does not detail the deprivation of personal property in the complaint, he has attached as an exhibit a Small Claims for Property Damage or Loss as an exhibit or attachment. ECF No. 1-5. It is difficult to read, but appears to claim that on September 27, 2013, to February 13, 2014, multiple employees at USP Hazelton confiscated his privately owned property which he details in 21 line items. Id. at 2-4.  The form raises a claim for administrative settlement under 31 U.S.C. § 3723. This section of the Code  provides that the "head of an agency... may settle a claim for not more than $1000 for damage to, or loss of, privately owned property that . . . Is caused by the negligence of an officer or employee of the United States Government acting with the scope of employment . . . ." 31 U.S.C. § 3723(a). This statute is part of the Military Personnel and Civilian Employees' Claim Act ("MPCECA"), and courts have long held that the statute was written in such a way as to make the agency's determination of claims final and conclusive, with no provision for review by the federal courts. See Merrifield v. United States, 14 Cl. Ct. 180, 183-84 (1988); See also Cook v. United States, 2012 WL 384887, at *3 (D.S.C. Jan. 6, 2012) (personal property claims against the BOP are governed by 31 U.S.C. § 3723 and the government's decisions regarding these claims are not subject to judicial review) (citing Merrifield and 31 U.S.C. § 3721(k)); Oriakhi v. United States, 2009 WL 1066109, at *1 (D.N.J. April 20, 2009) (same). Accordingly, to the extent that Plaintiff is seeking to appeal any denial of his claim, this Court is without jurisdiction to consider the same.

2. <u>USP Hazelton staff members returned to Plaintiff's original cell to pack his property and discovered two handcrafted weapons and tobacco.</u>

After Plaintiff was assigned to the SHU, USP Hazelton staff members returned to his original cell to pack his personal property and to remove that property from the cell. ECF No 46-2 at ¶ 8.  Staff members found two homemade weapons and an empty can of Copenhagen Long Cut Snuff in a locker in Plaintiff's original cell.  <u>Id.</u>  Plaintiff was charged and sanctioned for "Possession, Manufacturing, or Introduction of a Weapon" and "Possession of Anything Not Authorized."  <u>Id.</u>  Plaintiff lost forty days of good conduct time, lost commissary privileges for ninety days, and was placed in disciplinary segregation for seven days for possessing the handcrafted weapons.  <u>Id.</u>  Plaintiff lost commissary and phone privileges for thirty days for possessing the tobacco.  <u>Id.</u>

3. <u>Plaintiff was assigned to a Special Management Unit.</u>

On January 15, 2014, Plaintiff was notified that a hearing would be held on January 17, 2014, to determine whether he should be assigned to SMU.  ECF No. 46-3 at ¶ 6.[5]  Plaintiff refused to attend the hearing.  <u>Id.</u>  At the time, Thomas McGee, now retired, was a Discipline Hearing Officer in the BOP Mid-Atlantic Regional Office.  <u>Id.</u> at ¶ 1.  Mr. McGee conducted a hearing in Plaintiff's absence and recommended that he should be assigned to a SMU.  <u>Id.</u> at ¶ 6.  After the initial hearing, Mr. McGee learned that were additional facts and circumstances that were not considered at the initial hearing.  <u>Id.</u> at ¶ 7.  Accordingly, Mr. McGee conducted an administrative re-hearing on February 21, 2014.  <u>Id.</u> at ¶ 7.  Plaintiff was notified of the re-hearing on February 20, 2014.  <u>Id.</u> at ¶ 8.  Plaintiff refused to acknowledge that he had been notified of the re-

---

[5] Inmates are assigned to SMU if inmates present a unique security and management concerns. <u>Id.</u> at 5. Enhanced management ensures the safety, security, or orderly operation of BOP facilities, or protection of the public. <u>Id.</u>

hearing.  Id. at ¶ 9. Plaintiff refused to sign a form that expressly stated that he had the right to attend the hearing, make an oral statement, present documentary evidence, and receive the assistance of a staff representative. ECF No. 46-3 at 43-46. Plaintiff refused to attend the February 21, 2014 re-hearing.  ECF No. 46-3 at ¶ 10.[6]  Mr. McGee conducted the re-hearing in Plaintiff's absence. Id. Mr. McGee recommended that Plaintiff should be assigned to a SMU based on Plaintiff's history of disruptive behavior such as Plaintiff's affiliation with the Black Gangster Disciple Security Threat Group; Plaintiff's repeated violations of BOP policies; and that Plaintiff was discovered in possession of a contact list containing the personal information of USP Hazelton staff members and Plaintiff's admission that he planned to sell that information to other inmates. Id. at ¶ 11.

### 4. Plaintiff's assignment to the USP Hazelton SHU.

Plaintiff was assigned to the USP Hazelton SHU from September 27, 2013 until he was transferred out of the USP Hazelton on March 24, 2014.  ECF No. 46-4 at ¶ 3. Specifically, Plaintiff was assigned to USP Hazelton SHU cell 102 from January 9, 2014, through January 17, 2014.  Id. at ¶ 5.  Plaintiff was permitted to "self-carry" and "self-administer" a medication known as metoprolol tartrate to treat his hypertension. ECF No. 46-5 at ¶¶ 6-8.  Plaintiff also was permitted to "self-carry" and "self-administer" this hypertension medication in the USP Hazelton SHU.  Id.  In January 2014, Plaintiff had only filled one-hundred eighty tablets of this medication in the previous nine-hundred sixty-six days.  Id.  Plaintiff also took amitriptyline, gabapentin, and insulin.  Id. at ¶ 9.  A

---

[6] Mr. McGee specifically states: "BOP staff members at the United States Penitentiary in Bruceton Mills, West Virginia ("USP Hazelton') informed me that Buford had told them that he did not wish to attend the re-hearing. Based on that representation and the fact that Buford had refused to sign the form acknowledging that he had been notified of the SMU hearing, I conducted the re-hearing in Buford's absence on February 21, 2014." ECF No. 46-3 at ¶ 10.

USP Hazelton Health Services staff member distributed these medications to Plaintiff in the SHU because he was not permitted to "self-carry" or "self-administer" these medications.[7]  Id. at ¶ ¶ 6-7, 9.  The Health Services staff consistently visited Plaintiff in SHU to distribute these medications as prescribed.  ECF No. 5 at Attachment A.  Plaintiff occasionally refused to accept these medications.  Id.  A USP Hazelton Health Services staff member visited Plaintiff twice each day in the SHU to check his blood glucose level.  Id. at ¶ 10.  Between January 9, 2014 and January 17, 2014, the Health Services staff was only able to test Plaintiff's glucose level four times because Plaintiff refused to cooperate with the testing.  Id.  When Plaintiff was assigned to the USP Hazelton SHU, he had a valid medical pass which indicated that he was not permitted to climb into the top bunk of a bed.  Id. at ¶ 13.[8]  Medical devices such as back braces, special shoes, and insoles are not always provided to SHU inmates because they can be used to fashion weapons or to assist suicide. Id. ¶ 14.

    5. Plaintiff's administrative remedies.

Plaintiff filed no administrative remedies related to the condition of USP Hazelton SHU cell 102.  ECF No. 46-1 at ¶ 26.  Plaintiff filed no administrative remedies related to his purported contractual agreement with Monongalia General Hospital.  Id. at ¶ 27.  Plaintiff appealed his SMU designation to BOP General Counsel on April 7, 2014.  Id. at

---

[7] "When an inmate is assigned to USP Hazelton Special Housing Unit ("SHU"), he is permitted to continue taking prescribed medications. If an inmate has been permitted to 'self-carry' and 'self-administer' a medication, he is permitted to continue to 'self-carry' and self-administer' that medication in the SHU. When an inmate who is receiving medications through the 'pill line' process is placed in the SHU, a Health Services staff member will administer the inmate's medications by distributing them to the inmate through the food slot in SHU cell door." ECF No. 46-5 ¶ 7.

[8] There is no dispute that from September 27, 2013, through September 29, 2013, Plaintiff was assigned to an upper bunk in the SHU. ECF No. 46-1 at 17.

¶ 23.  This appeal was initially rejected.  Id.  Plaintiff resubmitted his appeal.  Id.  BOP General Counsel denied Plaintiff's appeal on June 26, 2014.  Id.

### C.  Plaintiff's Response

In response, Plaintiff argues that genuine issues of disputed material facts sufficient to deny Summary Judgment exist and contends "that [the] very claim itself is a genuine dispute of material fact."  ECF No. 69 at 2.  Again, Plaintiff alleges he was denied due process when he was placed in the SMU because he was the subject of "an involuntary psychological experiment in behavior modification."  Id. at 2-3.  Furthermore, Plaintiff stipulates the SMU program is invalid because it violates the Administrative Procedures Act ("APA") because there was no opportunity for public comment.  Id. at 3.  Plaintiff alleges that several USP Hazelton staff members interfered with his contractual obligations in a private contract between himself and Monongalia General Hospital.  Id. at 5.  Plaintiff asserts that he was deprived of due process and subjected to cruel and unusual punishment when he was assigned to the Special Housing Unit, and Plaintiff alleges that the conditions of USP Hazelton SHU cell 102 subjected him to cruel and unusual punishment.  Id. at 5-6. For relief, Plaintiff "seeks a monetary award with attorneys' fees, treble damages, and the closing of the SMU until such time [the unit] complies with the APA."  Id. at 8.

### III. <u>STANDARD OF REVIEW</u>

### A.  Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th

Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, Plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court, which has held that a "claim has factual plausibility when Plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer

more than "a sheer possibility that a defendant has acted unlawfully" in order to meet

the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Motion for Summary Judgment

A grant of summary judgment is appropriate "if the movant shows there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Motions for summary judgment impose a difficult

standard on the moving party because it must be obvious that no rational trier of fact

could find for the nonmoving party.  Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974

(4th Cir. 1990).  In applying the standard for summary judgment, a court must review all

evidence "in the light most favorable to the nonmoving party."  Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).   The court must avoid weighing the evidence or

determining the truth and limit its inquiry solely to a determination of whether genuine

issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden

of informing the court of the basis for the motion and of establishing the nonexistence of

genuine issues of fact.  Celotex, 477 U.S. at 323.  Once "the moving party has carried

its burden under Rule 56, the opponent must do more than simply show that there is

some metaphysical doubt as to material facts."  Matsushita Electric Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific

facts showing the existence of a genuine issue for trial.  Id.  This means that the "party

opposing a properly supported motion for summary judgment may not rest upon mere

10

allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

## IV. ANALYSIS

### A. Claims against Defendants in their official capacities are not appropriate in a Bivens action.

An inmate's lawsuit against a federal government employee in his official capacity is generally construed as a lawsuit against the United States itself. Kentucky v. Graham, 473 U.S.159, 165-66 (1985). However, an inmate's lawsuit against the United States is only appropriate where the United States has waived sovereign immunity. United States v. Sherwood, 312 U.S. 584, 586 (1941). The United States has not waived sovereign immunity with respect to lawsuits, like Plaintiff's, that allege constitutional tort claims. F.D.I.C. v. Meyer, 510 U.S. 471, 475-79 (1994).

Plaintiff alleges constitutional tort violations against each of the Defendants in their official capacities as government employees. ECF No. 1 at 1, 7-12. However, Buford's claims against Defendants in their official capacities are not appropriate in a

11

Bivens action.   Graham, 473 U.S. at 165-66.   Because Plaintiff has alleged constitutional tort violations, his claims are not properly construed as a suit directly against the United States.   Sherwood, 312 U.S. at 586; Meyer, 510 U.S. at 475-79. Accordingly, Plaintiff's claims against Defendants in their official capacities should be dismissed.

**B. Plaintiff exhausted administrative remedies regarding his assignment to SMU, but Plaintiff failed to administratively exhaust any other claims asserted in his Bivens Complaint, which precludes him from litigating these unexhausted claims.**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.   42 U.S.C. § 1997(e)(a).   Exhaustion as provided in § 1997(e)(a) is mandatory.   Booth v. Churner, 532 U.S. 731, 741 (2001).   A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies.   Porter v. Nussle, 534 U.S. 516, 524 (2002).   The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available.   Id. at 532.   Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court.   See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to

12

"reduce the quantity and improve the quality of prisoner suits."   Therefore, "the PLRA exhaustion requirement requires full and proper exhaustion."   <u>Woodford</u>, at 92-94 (emphasis added).   Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  <u>Id</u>. at 101-102.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff by filing a BP-8 form.  See 28 C.F.R. § 542.10, et seq.  If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden on form BP-9, within 20 calendar days of the date of the occurrence on which the complaint is based.  If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP by completing and filing a BP-10 form within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel by filing a BP-11 form within 30 days of the date the Regional Director signed the response.[9]  An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.  28 C.F.R. § 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D.Md. 1997).

---

[9] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CMM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

1. <u>Plaintiff exhausted administrative remedies when he challenged his assignment to SMU.</u>

A federal inmate who is designated to SMU can appeal directly to BOP General Counsel. ECF No. 46-1 at ¶ 22.[10] Plaintiff received notification that he had been designated to a SMU on March 20, 2014. ECF No. 46-3 at Attachment D at 4. This notification advised Plaintiff that he could appeal directly to BOP General Counsel. <u>Id.</u> Plaintiff had twenty days to file his appeal pursuant to 28 C.F.R. § § 542.14(a), 542.14(d)(4). Plaintiff timely appealed to BOP General Counsel on April 7, 2014. ECF No. 46-1 at ¶ 23. His appeal was initially rejected, but Plaintiff resubmitted his appeal on May 12, 2014. <u>Id.</u> Plaintiff's challenge to his SMU designation was exhausted when his appeal was denied by BOP General Counsel on June 26, 2014. <u>Id.</u>

2 <u>Plaintiff filed no administrative remedies regarding the condition of USP Hazelton SHU cell 102, nor did he exhaust administrative remedies regarding his placement in the USP Hazelton SHU.</u>

Plaintiff filed no administrative remedy requests related to the condition of USP Hazelton SHU cell 102. ECF No. 46-1 at ¶ 26. Plaintiff filed eight administrative remedy requests after he was placed into cell 102 on January 9, 2014, but these requests were unrelated to USP Hazelton SHU cell 102. <u>Id.</u> at ¶ ¶ 18, 22-25. Instead, these requests challenged disciplinary proceedings at USP Hazelton and USP Lewisburg, disputed Plaintiff's placement in SMU, and asserted that USP Lewisburg staff members had misrepresented whether he received a specific medical device. <u>Id.</u>

Further, Plaintiff did not exhaust administrative remedies with respect to his assignment to the USP Hazelton SHU or the conditions of his confinement in the SHU. ECF No. 46-1 at ¶ 8-25. On October 17, 2013, Plaintiff filed an administrative remedy

---

[10] In other words, the Plaintiff begins the process with a BP-11 form.

request at USP Hazelton alleging staff misconduct with respect to the conditions of his administrative detention. Id. at ¶ 16. This request was rejected on October 17, 2013. Id. Plaintiff did not resubmit his request or appeal. Id.

On October 26, 2013, Plaintiff filed an administrative remedy request at the BOP Mid-Atlantic Regional Office alleging a complaint about the USP Hazelton staff. Id. at ¶ 17. On November 4, 2013, the BOP Mid-Atlantic Regional office rejected Plaintiff's request because it should have been filed at the institution. Id. Plaintiff did not resubmit this request at the institution or appeal the rejection. Id.

On December 26, 2013, Plaintiff filed an administrative remedy submission at the BOP Mid-Atlantic Regional Office alleging discrimination. Id. at ¶ 21. This request was rejected because it should have been filed at the institution. Id. Plaintiff did not resubmit this request at the institution or appeal the rejection. Id. No other administrative remedy request filed by Plaintiff relates to the USP Hazelton SHU. Id. at ¶ ¶ 8-25.

3. Plaintiff filed no administrative remedies regarding his contractual agreement with Monongalia General Hospital.

Plaintiff did not file any administrative remedy requests related to his alleged contractual agreement with Monongalia General Hospital. ECF No. 46-1 at ¶ 27. Plaintiff alleges that he entered into a contractual agreement with Monongalia General Hospital on August 8, 2013. ECF No. 1 at 12. None of the administrative remedy requests submitted by Plaintiff after August 8, 2013 relate to the alleged contract. ECF No. 46-1 at ¶ ¶ 16-25.

4. <u>Plaintiff has not established that the administrative remedy process was unavailable to him nor has he offered a justification to explain why he failed to administratively exhaust the aforementioned claims.</u>

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," <u>Booth</u>, 532 U.S. at 741, n.6, several circuit courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. <u>See</u> <u>Ziemba v. Wezner</u>, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); <u>Miller v. Norris</u>, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); <u>Aceves v. Swanson</u>, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request).  Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable.  <u>See, e.g.</u>, <u>Turner v. Burnside</u>, 541 F.3d 1077, 1085 (11th Cir. 2008); <u>Kaba v. Stepp</u>, 458 F.3d 678, 686 (7th Cir. 2006); <u>Hemphill v. New York</u>, 380 F.3d 680, 688 (2d Cir. 2004).  <u>But see</u> <u>Larkin v. Galloway</u>, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because

plaintiff was afraid of retaliation).  For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies.  See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, Plaintiff has made no claim that prison officials prevented him from exhausting his administrative remedies. Nor, does he make any claim that prison officials threatened him with violence to discourage him from filing grievances. In fact, Plaintiff offers no justification whatsoever to explain why he failed to exhaust administrative remedies regarding his assignment to the SHU, the conditions of SHU cell 102, or interference by USP staff members with a contractual obligation in a private contract between himself and Monongalia General Hospital. Accordingly, those claims should be dismissed without prejudice for failure to exhaust administrative remedies.[11]

## C. Plaintiff's due process rights were not violated when he assigned Plaintiff to Special Management Unit.

A federal inmate does not have a liberty interest in avoiding transfer to more adverse or restrictive conditions of confinement.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The fact that an inmate was transferred away from the general prison population and no longer has access to the same privileges as the general population does not necessarily indicate a constitutional violation occurred.  Hewitt v. Helms, 459 U.S. 460, 468 (1983). Indeed, such restrictions are "well within the terms of confinement ordinarily

---

[11] The undersigned notes that despite asserting the affirmative defense of failure to exhaust, Defendants have also addressed the merits of Plaintiff's claim. The undersigned has declined to do so in light of the purpose of requiring exhaustion as outlined Woodford. 548 U.S. at 84-85.

contemplated by a prison sentence." Id.  Accordingly, the fact that Plaintiff was placed in a SMU is not a per se violation of his constitutional rights.

    1.  Plaintiff received all required due process rights when he was assigned to SMU.

When an inmate is facing discipline, he is entitled to certain due process rights, including: 1.) a written notice of the charged violation(s) at least twenty-four hours before the disciplinary hearing; 2.) the opportunity to call witnesses and present documentary evidence (if permitting the inmate to do so is not unduly hazardous to institutional safety or correctional goals); 3.) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary proceeding involves complex issues; 4.) a written statement by the decision maker describing the evidence relied upon and the reasons for disciplinary action; 5.) and an impartial decision maker. Wolff v. McDonnell, 418 U.S. 539, 564-71 (1974). As detailed below, Plaintiff received each of the aforementioned due process rights.

    a. Plaintiff received written notice of the SMU hearing.

Due process requires that an inmate be given written notice of a disciplinary hearing at least twenty-four hours before the hearing is held. Wolff, 418 U.S. at 564. This notice allows the inmate to "marshal the facts in his defense and to clarify what the charges are." Id.

On January 15, 2014, Plaintiff received written notice of the original SMU hearing. ECF No. 46-3 at ¶ 6. On January 17, 2014, the hearing was conducted. Id. Plaintiff received written notice of the re-hearing on February 20, 2014. Id. at ¶ 8. The re-hearing was conducted one day later on February 21, 2014. Id. at ¶ 7.

b. Plaintiff had the opportunity to present documentary evidence, to present witness testimony, and to have a staff member assist him at the SMU hearing.

Prior to both the initial SMU hearing and the re-hearing, Plaintiff was notified in writing that he had the right to attend the hearing, present documentary evidence and witness testimony, and to have a staff member assist him to prepare for the SMU hearing. ECF No. 46-3 at Attachment B at 3; Attachment E at 3. Plaintiff refused to attend the initial SMU hearing and the administrative re-hearing. ECF No. 46-3 at ¶ ¶ 6, 10. By refusing to attend the hearings, Plaintiff elected not to exercise his due process rights. Id. Accordingly, at the initial hearing and the re-hearing, the Hearing Administrator found that Plaintiff waived his right to appear, requested no staff assistance, and offered no additional information. ECF No. 46-3 at Attachment C at 1; Attachment D at 1.

c. Plaintiff received a written report explaining why he was assigned to SMU.

Following a SMU hearing, the Hearing Administrator must prepare a report which provides a detailed explanation of the Hearing Administrator's findings. ECF No. 46-3 at Attachment A at 5.

Following the SMU re-hearing, Plaintiff received a written report which explained the Hearing Administrator's findings. ECF No. 46-3 at Attachment D. This report was delivered to Plaintiff on March 20, 2014. Id. at 4. This report explained in detail that Mr. McGee had decided to assign Plaintiff to SMU based on his history of serious and disruptive behavior such as Plaintiff's affiliation with the Black Gangster Disciple Security Threat Group, the fact that Plaintiff was discovered in possession of a contact list containing the personal information of USP Hazelton staff members and Plaintiff's

admission that he planned to sell that information to other inmates, and Plaintiff's repeated violations of BOP policies. Id. at 2-3.

    d.  Mr. McGee was an impartial decision maker.

BOP policies require that a SMU Hearing Administrator must be trained and certified as a Discipline Hearing Officer, an impartial decision-maker, and not personally involved as a witness or victim in any relevant disciplinary acting involving the inmate. ECF No. 46-3 at Attachment A at 4.

Here, Mr. McGee was employed as a Discipline Hearing Officer for the BOP. ECF No. 46-3 at ¶ 1. Mr. McGee based his determination that Plaintiff should be designated to a SMU solely on the documents reviewed and the evidence presented at the SMU referral hearings. Id. at ¶ 12. Further, Mr. McGee was not personally involved in Plaintiff's disciplinary history until after the BOP Regional Director recommended that Plaintiff should have a SMU hearing. Id. at ¶ 13. Moreover, available records contradict Plaintiff's assertion that Mr. McGee initially recommended that Plaintiff should be assigned to a SMU and then subsequently presided over Plaintiff's SMU hearing. BOP policies reflect that a Hearing Administrator is not assigned until after the BOP Regional Director first determines that the inmate should appear at a SMU hearing. ECF No. 46-3 at Attachment A at 3-4. Accordingly, Mr. McGee was not involved in the initial decision to determine whether Plaintiff should be referred to a SMU hearing. ECF No. 46-3 at ¶ 13. Mr. McGee was not assigned to preside over Plaintiff's SMU hearing until after the BOP Regional Director had already determined that Plaintiff should be referred to a SMU hearing. Id.

2.  <u>The Special Management Unit does not violate the APA</u>

The bulk of Plaintiff's allegations regarding his placement in a SMU center on his allegation that by establishing and maintaining the SMU program, the BOP has violated the Administrative Procedures Act of Title 5 of the United States Code. However, Plaintiff's allegation is wholly without merit. Although the APA provides for judicial review of agency actions under 5 U.S.C. § 702, section 701(a) provides an exception to the APA's entitlement to judicial relief where "statutes preclude judicial review." 5 U.S.C. § 701 (a)(1).

Under 18 U.S.C. § 3621, in designating the place of an inmate's imprisonment, the BOP may consider factors including: "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; [and] (3) the history and characteristics of the prisoner." Under 18 U.S.C. § 3625, designation decisions governed by section 3621 are except from challenge under the APA. BOP Program Statement 5217.01, Special Management Units, is a policy statement regarding designation of the place of an inmate's imprisonment. Therefore, it may not be challenged under the APA. <u>Terrell v. Rupert</u>, No. 7:11-cv-00024, 2011 WL 6046618 at 5 (W.D. Va. Dec. 5, 2011) (dismissing pursuant to section 3625 the plaintiff's claim that BOP  Program Statement 5217.01, Special Management Units, was promulgated in violation of the APA because it was implemented without an opportunity for notice and comment). Accordingly, Plaintiff's claims regarding his assignment to the SMU should be dismissed with prejudice.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss, or alternatively, for Summary Judgment [ECF No. 45] be **GRANTED**, and the Plaintiff's Complaint be **DISMISSED WITH PREJUDICE** with respect to claims regarding designation to the Special Management Unit and all claims against Defendants in their official capacity and be **DISMISSED WITHOUT PREJUDICE** with respect to Plaintiff's claims regarding placement in the Special Housing Unit, the conditions of Cell 102 in the Special Housing Unit, and alleged interference with any contractual agreement with Monongalia General Hospital for failure to exhaust administrative grievances.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objections are made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir.1985); United States v. Schronce, 727 F.2d 91 (4th Cir.1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se plaintiff by certified mail, return receipt requested, to his last known address as

shown on the docket sheet and provide a copy to counsel of record via electronic means.

DATED: July 27, 2017.

*/s Robert W. Trumble*

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE